Tracey Salmon-Smith
DRINKER BIDDLE & REATH, LLP
600 Campus Drive
Florham Park, NJ 07932-1047
(973) 549-7000
(973) 360-9831 (facsimile)
tracey.salmonsmith@dbr.com
*Attorney for Wells Fargo Clearing Services, LLC*

Andrew R. Park
PARK SENSENIG LLC
2310 West Main Street
Richmond, VA 23220
(804) 417-6085
(888) 552-1781 (facsimile)
andrew.park@parksensenig.com
*Pro Hac Vice Attorney for Wells Fargo Clearing Services, LLC*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X
HEATH JUSTIN HARRIS,                           :
                                               :
                    Plaintiff,                 :   Civil Action No.18-cv-04625(GBD)
                                               :
    v.                                         :   **OMNIBUS MEMORANDUM OF LAW IN**
                                               :   **SUPPORT OF**
WELLS FARGO CLEARING                           :   **CROSS-PETITION TO CONFIRM AND**
SERVICES, LLC,                                 :   **IN OPPOSITION TO MOTION TO**
                                               :   **VACATE**
                    Defendant.                 :   **ARBITRATION AWARD**
                                               :
---------------------------------------------------X

*(via electronic filing)*

Wells Fargo Clearing Services, LLC ("Wells Fargo"), by counsel and pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, states as follows for its Memorandum in Support of Cross-Petition to Confirm and in Opposition to Motion to Vacate Arbitration Award. The underlying arbitration at issue proceeded before Financial Industry Regulatory Authority Dispute Resolution ("FINRA") and was styled *Wells Fargo Clearing Services, LLC, d/b/a Wells Fargo*

*Advisors v. Heath J. Harris*, FINRA 17-02972. A copy of the subject arbitration award ("Award") is attached as Exhibit "A."

## Introduction

This matter involves cross-petitions – one to vacate and the other to confirm an arbitration award. The crux of the issue over vacatur/confirmation relates to notice of the arbitration to, and service of the statement of claim on, Plaintiff Heath Justin Harris ("Harris").

Harris claims that, due to no fault of his own, he had "no notice of the arbitration proceedings" and was not served with process. *See* Petition to Vacate ¶ 34. The evidence shows otherwise. First, service by FINRA was proper. FINRA properly sent the statement of claim, as well as other papers, to Harris's residential address of record. If Harris did not receive them, it was due to his own failure to update his residential address with FINRA as required by FINRA bylaws. Second, Harris knew about his obligations to Wells Fargo and Wells Fargo's stated intent to file an arbitration if necessary. Harris admits that he received Wells Fargo's first demand letter and that he had a conversation with Wells Fargo during which he gave his new business address. Third, Wells Fargo sent courtesy copies of arbitration papers to Harris at his new business address.

## Facts

Harris has worked in the securities industry since 2006, and he was an "associated person," as defined by FINRA, with Wells Fargo from July 2015 through July 2017. (LaMar Aff. ¶ 3) (The LaMar Affidavit is attached to this Memorandum as Exhibit "B"). While with Wells Fargo, Harris executed two promissory notes ("Notes") that required Harris to repay any outstanding balances when his employment with Wells Fargo ended. (LaMar Aff. ¶ 4 & ex. 1 & 2; Harris Aff. ¶ 8 & ex. A & B) (The Harris Affidavit is attached to this Memorandum as Exhibit "E"). Harris resigned from Wells Fargo in July 2017 and joined Citigroup. (LaMar Aff. ¶ 5; Harris Answer to

Interrogatory No. 11; Harris Response to Request for Admissions No. 6 & 7)("Petitioner Heath Justin Harris's Responses to Respondent's Request for Production of Documents, Request for Interrogatories and Request for Admissions" is attached to this Memorandum as Exhibit "C"). His resignation triggered his repayment obligations under the Notes. (LaMar Aff. ¶ 4 & ex. 1 & 2; Harris Aff. ¶ 8 & ex. A & B).

On August 18, 2017, Carolyn LaMar ("LaMar") at Wells Fargo contacted Harris by telephone and requested his contact information so that she could send him a demand letter regarding the overdue Notes. (LaMar Aff. ¶ 7; Harris's Answer to Interrogatory No. 3). Harris provided LaMar his Citigroup work address—1901 Wisconsin Avenue NW, Washington DC 20007. (LaMar Aff. ¶ 8; *see* Harris's Answer to Interrogatory Nos. 3 & 4; Harris's Response to Request for Admissions No. 8 & 9). LaMar then sent a demand letter to Harris on that same day at the work address he provided during their telephone call—1901 Wisconsin Avenue NW, Washington DC 20007. (LaMar Aff. ¶ 9 & ex. 3). The August 18, 2017 letter demanded payment of the balance of the Notes within ten (10) business days of the date of the letter. *Id.* The August 18, 2017 letter also expressly states that "if this matter is not resolved within the time frame specified above [ten (10) business days of the date of the letter], Wells Fargo **will** initiate proceedings against you in order to secure payment. We will claim the full amount due, plus interest, attorneys' fees and all costs and expenses incurred during arbitration." *Id.* (emphasis added). Harris admits that he received the August 18, 2017 letter.[1] (Harris's Response to Request for Admissions No. 1). LaMar also received a Federal Express receipt for its delivery. (LaMar

---

[1] Harris failed to timely respond to Wells Fargo's requests for admission, and so the requests are deemed admitted pursuant to Fed. R. Civ. P. 36(a)(3). Should the Court determine to allow Harris's late responses, Harris did admit to receiving the August 18, 2017 letter in his response to Request for Admission No. 1.

3

Aff. ¶ 10 & ex. 4). Thus, as of August 18, 2017, Harris was on notice that Wells Fargo intended to initiate arbitration proceedings against him for lack of payment of the Notes should he fail to pay.

LaMar sent another letter dated October 4, 2017 to Harris at the business address he provided her—1901 Wisconsin Avenue NW, Washington DC 20007—which is the same address where LaMar sent the August 18, 2017 letter that Harris admits he received. (LaMar Aff. ¶ 12 & ex. 5). The package was successfully delivered via Federal Express to the business address Harris provided LaMar. (LaMar Aff. ¶¶ 10 & 13 & ex. 4 &6). The October 4, 2017 letter demands immediate payment of the balance of the notes. (LaMar Aff. ¶ 12 & ex. 5). A copy of the Preliminary Statement of Claim was enclosed with the October 4, 2017 letter. *Id.* Although Harris claims he never received the October 4, 2017 letter, it was sent to the same business address that Harris had given LaMar during their telephone call, and Harris's Answer to Interrogatory Number 2 shows that the October 4, 2017 letter and enclosure were delivered to Harris's business address. (Harris's Answer to Interrogatory No. 2; LaMar Aff. ¶ 12 & ex. 5). If Harris did not personally receive this letter in October 2017, it is through no fault of Wells Fargo as Wells Fargo has a Federal Express receipt for its delivery at the address Harris provided LaMar. (LaMar Aff. ¶ 13 & ex. 6). In addition, the October 4, 2017 letter and enclosures were actually found at that Harris's business address that he provided LaMar. (Harris's Answer to Interrogatory No. 2).

When Wells Fargo did not receive a response to its October 4, 2017 letter, Wells Fargo filed a statement of claim with FINRA in November 2017 and sent a copy of it to Harris at the same address he provided to LaMar where he admitted he received the August 18, 2017 letter. (Burns Aff. ¶ 3 & ex. 1)(The Burns Affidavit is attached to this Memorandum as Exhibit "D"). That was one of two courtesy letters counsel for Wells Fargo sent Harris in connection with

4

arbitration, and both of those letters were sent to the business address Harris provided LaMar. (Burns Aff. ¶¶ 3 & 5 & ex. 1 & 2). Neither Wells Fargo nor its counsel ever received any notice that its correspondence to Harris was not deliverable to the work address he provided LaMar. (LaMar Aff. ¶ 15; Burns Aff. ¶¶ 4 & 6). Harris admits that the Wisconsin Avenue address has been his work address since he joined Citigroup on July 21, 2017. (Harris's Response to Request for Admissions Nos. 7 & 8). Harris also admits that in 2017 he did not advise Wells Fargo of any change in his residential address. (Harris's Response to Request for Admissions No. 10).

As to service of the Statement of Claim by FINRA on Harris at his residential address, FINRA served Harris at the residential address on his U-4 as is required by FINRA rules. (Burns Aff. ¶¶ 8 & 9 & ex. 4 & 5)(The letter dated November 27, 2017 that FINRA sent Harris notifying Harris of his Answer due date is attached to the Burns Affidavit as Exhibit 5; Harris's U-4 at the time of the arbitration is attached to the Burns affidavit as Exhibit 4). All FINRA mailings to Harris's former residential address were due to Harris's failure to update his address with FINRA, as required. As a result, FINRA served the arbitration papers on Harris at his residential address of record. If Harris in fact did not receive service of the underlying FINRA arbitration, it would be the direct result of Harris's failure to meet his basic obligation, set forth in the FINRA By-Laws, to advise FINRA of his new address.[2]

**Argument**

Wells Fargo requests that the Court confirm the Award pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9. Section 9 of the Act states in part:

---

[2] The documents produced by FINRA pursuant to the document subpoena requested by Wells Fargo and issued by the Court did not include any documents or information showing that mail sent to Harris's residential address of record was returned to FINRA. (Burns Aff. ¶ 7 & ex. 3). The document subpoena specifically asked for evidence of returned mail.

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.  Confirmation of the Award is proper here because all statutory requirements of the FAA are satisfied.  First, Harris and Wells Fargo agreed to arbitrate disputes as the Notes included a provision whereby the parties agreed that any disputes arising out of the agreement would be submitted to arbitration. (LaMar Aff. ¶ 4 & ex. 1 at ¶ 7 & ex. 2 at 2-3). Second, Wells Fargo has moved for confirmation within one year of the Award, which was issued April 23, 2018. (Exhibit "A").  Third, in the Award, "[t]he Arbitrator determined that [Harris] was served with the Statement of Claim, an Overdue Notice and Notification of Arbitrator by regular mail, and is therefore bound by the Arbitrator's ruling and determination."[3] (Exhibit "A" at 2).

As to service of the Statement of Claim by FINRA on Harris at his residential address, Section 13301(a) of the FINRA Code of Arbitration Procedure for Industry Disputes provides that "[t]he Director will serve the Claim Notification Letter on an associated person directly at the

---

[3] In a similar case, *Staples v. Morgan Stanley Smith Barney*, 2013 U.S. Dist. LEXIS 154350, 2013 WL 5786593 (D. Mont. 2013), the court stated that "[o]nly manifest disregard of the law (which is a narrow subset of acts falling into the general statutory category of acts in excess of the arbitrator's powers) will support vacatur when it can be shown that the arbitrator appreciated the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Id.* at *16 (citation omitted). In *Staples*, "[t]he evidence support[ed] the arbitrator's finding that FINRA properly served Staples with the Statement of Claim and other arbitration notices, including the arbitration award." *Id.* at *17. The court determined "[i]t was Staples responsibility to update his CRD as to both his business and residential addresses, and it was his failure to do so that caused him not to receive FINRA's first mailing of the Statement of Claim." *Id.* The court the held that "Staples cannot refuse to participate in arbitration and then undo the arbitration award by claiming that he did not know about it." *Id.*

6

person's residential address or usual place of abode." The Director served the claim notification letter on Harris's listed residential address. Any mailings by FINRA to Harris's former residential address were due to Harris's failure to update his address with FINRA, as required by FINRA bylaws. Article V of FINRA's By-Laws required Harris to update the information on his Form U4. *See, e.g., Department of Enforcement v. Flanagan*, FINRA Disciplinary Proceeding No. 2016050447102 (June 8, 2018) p. 4 ("Article V, Section 2(c) of FINRA's By-Laws requires that 'every Form U4 filed with FINRA must be accurate, and must be kept current through supplemental amendments that are to be filed within 30 days of learning of the facts and circumstances giving rise to the amendment.'"). Harris did not update his residential address as is required by FINRA nor has Harris provided any evidence supporting his assertion that he requested his employer to do so on his behalf.

The email that Harris produced in an effort to support his assertion that he instructed his employer to update his residential address is incomplete and does not mention FINRA or actually request his employer to update anything with FINRA. (Harris Aff. ¶¶ 15-17 & ex. C). Even if Harris did request his employer to update his residential address, that would not satisfy Harris's responsibility under FINRA's bylaws. "As the Securities and Exchange Commission has stated, 'The duty to maintain an accurate Form U4 lies primarily with an associated person who is in the best position to provide information about the questions presented on the form.'" *Department of Enforcement v. Flanagan*, FINRA Disciplinary Proceeding No. 2016050447102 (June 8, 2018) p. 4 (quoting *N. Woodward Fin. Corp.*, Exchange Act Release No. 74913, 2015 SEC LEXIS 1867 at *28 (May 8, 2015)).

Harris is a professional in a highly regulated industry. The onus is on Harris to show he updated his residential address with FINRA. *See, e.g., Staples*, 2013 U.S. Dist. LEXIS 154350,

7


2013 WL 578659. Harris implicitly acknowledged this duty to update and its importance in his motion to vacate.  And yet, Harris failed to meet his obligation to advise FINRA of a change in his residential address. As a result, FINRA served the arbitration papers on Harris at his residential address of record making such service proper. If Harris in fact did not receive service of the underlying FINRA arbitration, it would be the direct result of Harris's failure to meet his basic obligation, set forth in the FINRA By-Laws, to advise FINRA of his new residential address.

In addition, even if Harris did not receive proper service of the Statement of Claim, he was well aware of the case against him.  On August 18, 2017, LaMar at Wells Fargo contacted Harris and requested his contact information.  (Harris's Answer to Interrogatory No. 3).  The August 18, 2017 letter, which Harris admits he received, expressly states that "if this matter is not resolved within the time frame specified above [ten (10) business days of the date of the letter], Wells Fargo **will** initiate proceedings against you in order to secure payment. We will claim the full amount due, plus interest, attorneys' fees and all costs and expenses incurred during arbitration." (LaMar Aff. ¶ 9 & ex. 3; Harris's Response to Request for Admissions No. 1)(emphasis added).  As of August 18, 2017, Harris was on notice that Wells Fargo intended to initiate arbitration proceedings against him for lack of payment of the notes.

There were other correspondence regarding the claim against him that were sent to the business address he provided LaMar as well.  Harris comes up with various excuses about why he did not receive that correspondence and why he did not follow up on the claim even though he knew Wells Fargo was going to file a claim against him in arbitration.  His excuses are many and varied and include the following: (1) his employer at the Wisconsin Avenue business address may have had problems with its front office and/or previous branch manager (Harris's Answer to Interrogatory No. 2); (2) the front desk of his old residential address, which he visited only **once**

after he moved to see if any mail was there for him, only had a few magazines for him (Harris's Answer to Interrogatory No. 8); (3) he moved to a residential address that was new and the United States Postal Service could not find his new address electronically and had problems forwarding his mail (Harris's Answer to Interrogatory No. 7); (4) he did not have access to the FINRA reporting system and so could not update his own U-4 (Harris Aff. ¶ 17); (5) he called LaMar **once** after she called him on August 18, 2017 and her voice mail said she was on employment leave (Harris's Answer to Interrogatory No. 3); and finally, (6) he told his Citigroup supervisor's assistant that he had a new residential address in connection with another matter in December 2017 and she failed to update his U-4 for him (Harris Aff. ¶¶ 15-16 & ex. C; Harris's Answer to Interrogatory No. 13).  Such excuses are an obvious attempt by Harris to hide the fact that: (1) he failed in his duty as an associated person to update FINRA as required; and (2) he had notice of the underlying arbitration yet chose to do nothing and then challenged a default award against him.

Harris cannot use his own willful "ignorance" of the arbitration proceedings and his failure to report his new residential address to FINRA as a sword against Wells Fargo.  *See, e.g., Staples*, 2013 U.S. Dist. LEXIS 154350, 2013 WL 578659.  Wells Fargo did all that it was required and more to provide Harris with notice, and FINRA properly served Harris at his residential address of record as required by FINRA rules.

## Conclusion

Wells Fargo respectfully requests the Court to deny the Petition to Vacate, to grant the Cross-Petition to Confirm Arbitration Award, and to award such other relief including attorney's fees and costs pursuant to Harris's promissory note obligations to Wells Fargo, as requested in the Cross-Petition to Confirm Arbitration Award.

Dated:  Richmond, VA
　　　　October 30, 2018

DRINKER BIDDLE & REATH, LLP

*/s/ Tracey Salmon-Smith*
Tracey Salmon-Smith
DRINKER BIDDLE & REATH, LLP
600 Campus Drive
Florham Park, NJ 07932-1047
(973) 549-7000
(973) 360-9831 (facsimile)
tracey.salmonsmith@dbr.com
*Attorney for Wells Fargo Clearing Services, LLC*


PARK SENSENIG LLC

*/s/ Andrew R. Park*
Andrew R. Park
PARK SENSENIG LLC
2310 West Main Street
Richmond, VA  23220
(804) 417-6086
(888) 552-1781 (facsimile)
andrew.park@parksensenig.com
*Pro Hac Vice Attorney for Defendant Wells Fargo Clearing Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was served by e-mail and by first-class mail, postage prepaid, this 30th day of October, 2018 to:

>Joshua D. Brinen, Esq.
>BRINEN & ASSOCIATES, LLC
>90 Broad Street, 2nd. Floor
>New York, NY  10004
>Email:  jbrinen@brinenlaw.com
>*Counsel for Plaintiff Heath Justin Harris*

>  */s/ Andrew R. Park*
>  Andrew R. Park